# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Yuleisby Eliana Bello Oropeza, et al., | No. CV-26-01251-PHX-SHD (JFM) |
| Petitioners, | **ORDER** |
| v. |  |
| Kristi Noem, et al., |  |
| Respondents. |  |

The Court has reviewed Petitioners' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and Motion for Ex Parte Temporary Restraining Order. (Docs. 1–2.) The Court ordered briefing on the Petition and Motion. Thereafter, Petitioner Contreras sought an emergency TRO enjoining his removal. (Doc. 20.) The Court granted the TRO and later extended it; the TRO expires on May 21, 2026. (Doc. 24.) The Court will grant the Petition and deny the Motion for Temporary Restraining Order as moot.

## I.    Background

Petitioners are three Venezuelan nationals who came to the United States in October 2022 (Oropeza), August 2022 (Contreras), and March 2023 (Benitez), respectively. (Doc. 1 at ¶¶ 22-33.) Petitioners each applied for and were granted Temporary Protected Status ("TPS") pursuant to the 2023 designation of TPS for Venezuelans. (*Id.* at ¶¶ 22, 26, 30.) Petitioners have each consistently re-registered for TPS since their initial registration, including pursuant to the most recent January 17, 2025 extension which, Petitioners argue, extended protection for Venezuelan TPS beneficiaries through October 2, 2026. (*Id.*)

On February 3, 2025, DHS Secretary Noem announced she was vacating the January 17, 2025 extension of TPS for Venezuelans. (*Id.* at ¶ 45.) Shortly thereafter, on February 5, 2025, DHS issued a notice stating that the 2023 Venezuela TPS designation was vacated in its entirety. (*Id.* at ¶ 46.) The National TPS Alliance ("NTPSA") and several individual TPS holders filed suit to challenge both actions in the Northern District of California, alleging violations of the Administrative Procedure Act ("APA") and the Fifth Amendment. *Nat'l TPS All. v. Noem*, No. 3:25-cv-01766-EMC, (N.D. Cal. filed Feb. 19, 2025). The *NTPSA* court issued three significant rulings.

First, on March 31, 2025, it granted preliminary injunctive relief to "postpone the challenged [TPS vacatur] pending final adjudication of the merits of [the] case." *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 815 (N.D. Cal. 2025), *aff'd*, 150 F.4th 1000 (9th Cir. 2025). The court reasoned that, under Section 705 of the APA, the plaintiffs had (1) shown a likelihood of irreparable injury because TPS holders would lose work authorization and legal status and would be separated from "family, friends, and communities," *id.* at 836; (2) the public interest weighed in favor of postponement because of the "significant economic contributions" TPS holders made to their communities and the risks to public safety from "[f]ears of detention and deportation," *id.* at 840, 842; and (3) the balance of hardships weighed in plaintiffs' favor "because of the substantial economic, public safety, and humanitarian ramifications," *id.* at 844. Assessing the likelihood of success on the merits, the court reasoned that the TPS statute does not permit a Secretary to terminate a TPS designation before it expires and, even if the Secretary had such a right, the Secretary's vacatur "was founded on legal error" that the previous Secretary's extension was unlawful, and was therefore "arbitrary and capricious." *Id.* at 852–54.

Following the *NTPSA* court's March 31 decision, the government sought a stay of enforcement of the decision from the Supreme Court. The Supreme Court granted the stay, ruling without reasoning that the March 31 order was "stayed pending the disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought." *See Noem v. Nat'l TPS All.*,

145 S. Ct. 2728, 2729 (2025) (mem.).

The Ninth Circuit subsequently affirmed the entry of the preliminary injunction. *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1009 (9th Cir. 2025). The Ninth Circuit reasoned that "where Congress has spoken as to the proper procedure for reversing a decision, agencies lack the inherent authority to circumvent the statute," and that by "explicitly providing the procedure by which a TPS designation is terminated," Congress "displaced any inherent revocation authority" by the Secretary. *Id.* at 1020–21. The Ninth Circuit also addressed the scope of relief, determining that nationwide relief was the "only remedy that provide[d] complete relief to the parties before the court and complie[d] with the TPS statute." *Id.* at 1028. The court specifically stated that "limiting the relief to individual plaintiffs and NTPSA members [was] not a workable solution under the TPS statute," indicating that the district court's rulings apply beyond merely the parties before that court. *Id.* Despite the Ninth Circuit's decision affirming the March 31 preliminary injunction order, it remains stayed pending disposition of any petition for writ of certiorari. *See Noem*, 145 S. Ct. at 2729.

Second, on September 5, 2025, the *NTPSA* court granted summary judgment to the plaintiffs on their APA claim. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025), *aff'd*, 166 F.4th 739 (9th Cir. 2026). The court found Secretary Noem (1) lacked the statutory authority to vacate the previous DHS Secretary's extension of the 2023 TPS Designation; and (2) exceeded her authority when she purported to invalidate documentation that had already been issued pursuant to the extension. *Id.* at 1144–46. As with the preliminary injunction order, the Supreme Court stayed the summary judgment order without providing the reasoning for its decision. *Noem v. Nat'l TPS All.*, 146 S. Ct. 23 (2025) (mem.). The Ninth Circuit later affirmed the grant of Summary Judgment, *Nat'l TPS All. v. Noem*, 166 F.4th 739, 749 (9th Cir. 2026), but it remains stayed.

Third, on December 10, 2025 the *NTPSA* court entered a declaratory judgment (the "*NTPSA* declaratory judgment") deeming Secretary Noem's vacatur and termination unlawful. *Nat'l TPS All. v. Noem*, 2025 WL 3539156, at *3 (N.D. Cal. 2025). (Doc. 1 at

- 3 -

¶ 49.) The court initially stayed its decision for two weeks to permit the government to appeal and seek a further stay. (Doc. 1 at ¶ 49.) The government appealed but did not seek a stay. (*Id.*) The declaratory judgment forms the basis for the instant Petition.

Petitioners Oropeza, Contreras, and Benitez were taken into immigration custody in October 2025, December 2025, and January 2026, respectively. (*Id.* at ¶¶ 25, 29, 33.) Petitioners assert two separate counts in their Petition in which they seek release from detention based on 8 U.S.C. § 1254a and the Fifth Amendment. (*Id.* at ¶¶ 62–67.) Specifically, Petitioners argue that their TPS status precludes their detention and they seek their release from custody. *See* 8 U.S.C. § 1254a(a)(1)(A), (d)(4) ("An alien provided temporary protected status under this section shall not be detained by the Attorney General.").

Respondents oppose the Petition on five grounds, arguing: (1) two Petitioners' claims are moot, (Doc. 17 at 3–4); (2) "[n]one of the Petitioners were granted TPS that extended beyond April 2, 2025, though all of them applied for it," (*id.* at 2; *see also id.* at 7); (3) the *NTPSA* court's December 10 declaratory judgment is not entitled to preclusive effect outside of the Northern District of California, (*id.* at 8–11); (4) the Supreme Court's stays of the district court's preliminary injunction and summary judgment orders "weigh against providing injunctive relief," (*id.* at 13); and (5) 8 U.S.C. § 1252(g) deprives the Court of jurisdiction to enjoin removal. The Court will address each of these arguments.

## II. Discussion

### A. Mootness

#### 1. Petitioner Oropeza

On February 9, 2026, Petitioner Oropeza's immigration proceedings were terminated and the Government waived appeal on February 25, 2026. (Doc. 17-1 at ¶ 19–20.) Petitioner was released from immigration detention on February 26, 2026. (*Id.* at ¶ 21.)

#### 2. Petitioner Contreras

On February 19, 2026, Petitioner Contreras filed a separate habeas action

challenging his immigration detention. That petition was granted on February 26, 2026, *Venegas Contreras v. Noem*, No. 2:26-cv-1197-SPL--JFM, (D. Ariz. 2026) (Doc. 9), and Petitioner received a bond redetermination hearing on March 3, 2026, but was denied bond, (Doc. 18-1 at ¶ 6). He remains in immigration custody.

### 3. Petitioner Benitez

Petitioner Benitez was placed in full removal proceedings on January 30, 2026. He requested bond but was denied bond because he was classified as an arriving alien. (Doc. 17-2 at ¶¶ 11–13.) He too remains in immigration custody.

### 4. Analysis

Respondents contend Oropeza's and Contreras's claims are moot. The Court disagrees. As Petitioners point out, the "in custody" requirement of 28 U.S.C. § 2241 is satisfied if the petitioner was in custody "at the time the petition was filed." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Because Petitioners Contreras[1] and Benitez remain in custody there is no doubt their claims are not moot.

And the Court finds Oropeza's claims still "present[] a case or controversy under Article II, § 2, of the Constitution" because the outcome of this proceeding may determine whether she is again subject to detention. *Id.* at 7 (reasoning that a habeas petition is not moot if petitioners "continue to have a personal stake in the outcome"); *see also Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) (a released habeas petitioner retains a live controversy where there is a "'collateral consequence' that may be redressed by success on the petition" (citation omitted)). Two collateral consequences are present here. First, the immigration court's order terminating Oropeza's removal proceedings was entered without prejudice, leaving the Government free to "hit the reset button and begin deportation proceedings anew." *Sanchez v. Sessions*, 904 F.3d 643, 655 (9th Cir. 2018); *cf. Heracovici v. Holder*, 473 F. App'x 710 (9th Cir. 2012) (holding that termination without prejudice of

---

[1] The Court further notes that Contreras's parallel habeas proceeding does not affect this Court's analysis. That proceeding addressed his eligibility for bond under 8 U.S.C. § 1226(a); this proceeding addresses the statutory prohibition on detention of TPS holders under § 1254a(d)(4). The two grounds for release are independent, and a bond denial does not necessarily foreclose habeas relief based on § 1254a.

previous removal proceedings does not "constitute a final judgment on the merits"). Second, Petitioners have presented unrebutted evidence that DHS adopted a policy in May 2025 of re-detaining previously released noncitizens without individualized changed-circumstances determinations, and has been implementing that policy en masse. *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1021 (N.D. Cal. 2025) (finding that "in May 2025, DHS officers . . . began re-detaining released noncitizens on a large scale without making individualized determinations . . . uniformly depart[ing] from decades-long re-detention practices" (citation modified)). A ruling that Oropeza's TPS forecloses her detention and removal would supply a defense to both renewed removal proceedings and re-detention. *See Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (holding that released noncitizen's habeas petition "continue[d] to present a live case or controversy" because decision on the merits stood to bar re-detention on the same ground); *cf. Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) ("Res judicata bars relitigation of issues in immigration courts already litigated in Article III courts.").

### B.    Issue Preclusion

Petitioners claim that, under the declaratory judgment in *NTPSA*, they retain their TPS status and therefore may not be detained in immigration custody or removed from the United States. At bottom, this is a collateral estoppel argument.

The doctrine of collateral estoppel, otherwise known as issue preclusion, provides that "the determination of a question directly involved in one action is conclusive as to that question in a second suit" because "[o]nce a court has decided an issue, it is forever settled as between the parties, thereby protecting against the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent verdicts." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (citations modified). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* at 148 (citation modified). Issue

- 6 -

preclusion applies if "(1) there was a full and fair opportunity to litigate the issue in [a] previous action; (2) the issue was actually litigated in that action; (3) [there was] a final judgment on the merits; and (4) the person against whom collateral estoppel is asserted was a party or in privity with a party in the previous action." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008).

It is undisputed the first three factors are satisfied. Petitioners assert that they are protected from detention and removal by their TPS. Respondents disagree because DHS revoked TPS for Venezuelans in February 2025. This issue was previously litigated in *NTPSA*, though there, it took the form of an APA claim. Regardless, there was a full and fair opportunity to litigate the legality of DHS's vacatur and termination of TPS for noncitizen Venezuelans like Petitioners, the issue was actually litigated, and there was a final judgment on the merits—the *NTPSA* declaratory judgment—which has not been stayed and remains in effect.

As to the fourth factor, Respondents insist privity does not exist between the parties for two reasons. First, Respondents argue the prior action was brought by NTPSA and not Petitioners individually. But Respondents do not meaningfully engage with the argument that Petitioners are all *members* of NTPSA and, as members, are in privity with NTPSA. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) (holding that individual members are in privity with plaintiff organization for purposes of claim preclusion); *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064 (9th Cir. 2003) ("One of the relationships that has been deemed 'sufficiently close' to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members." (citation omitted)).

Indeed, Petitioners provide evidence that they are all members of NTPSA and Respondents do not address or dispute that evidence. (*See* Doc. 3-1 at 2, 8–9, 19.) Nor do Respondents dispute that Petitioners, as members of NTPSA, are in privity with it for purposes of issue preclusion. Respondents do not address this argument in any meaningful way, and have therefore waived any challenge to Petitioners' privity with NTPSA. *United*

*States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997) ("[B]ecause this argument was not coherently developed in his briefs on appeal, we deem it to have been abandoned.").

Second, Respondents argue that Respondent Warden Rokowsky—Eloy Detention Center's warden—was not a party in *NTPSA* and, further, that "[s]ubjecting Petitioners' immediate custodian to the judgment of the Northern District of California would be inconsistent with the immediate-custodian rule." (Doc. 17 at 11.)[2]  The salient question is whether Warden Rokowsky, as an official of the Department of Homeland Security, is in privity with the defendants in *NTPSA*—namely the Department of Homeland Security and its Secretary, Markwayne Mullin—for the purposes of issue preclusion.

Privity exists where "a person [is] so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052-53 (9th Cir. 2005). It is well-established that government officials "sued in their official capacities are generally considered to be in privity with the governmental entity that they serve." *Manunga v. Doe*, 2016 WL 11757766, at *3 (C.D. Cal. 2016); *cf. Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself."). The Court finds that Warden Rokowsky is in privity with the Department of Homeland Security. Accordingly, Respondents privity arguments fail.[3]  Because the *Kendall* test is satisfied, Respondents are bound by the *NTPSA* declaratory judgment and cannot relitigate the unlawfulness of the vacatur and termination of Petitioners' TPS.

---

[2]    Respondent's invocation of the immediate custodian rule is inapposite. The immediate custodian rule requires that habeas challenges to present physical confinement name "the warden of the facility where the [petitioner] is being held" as the proper respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Petitioners have properly done so in this case.

[3]    It is worth emphasizing that the collateral estoppel applied here is mutual. *See United States v. Mendoza*, 464 U.S. 154, 163–64 (1984) (distinguishing between mutual and nonmutual collateral estoppel as applied to the government and approving the former because "where the parties are the same, estopping the government spares a party that has already prevailed once from having to relitigate"). Thus, this case does not raise the concerns presented when parties assert nonmutual collateral estoppel against the government. *See id.*

### C.    Respondents' Remaining Arguments

#### 1.    TPS Expiration Dates

Respondents also maintain that Petitioners do not presently have TPS because Petitioners' proffered documents reflect a TPS expiration date of April 2, 2025. (Doc. 17 at 2.)  Petitioners, however, contend that their existing TPS—initially granted under the 2023 designation and timely re-registered—remains in force because no lawful agency action has terminated it.  The Court agrees because under the TPS statutory scheme, once an individual is granted TPS, that status continues unless it is lawfully terminated.

As Petitioners point out in their reply, 8 U.S.C. § 1254a delineates the two means by which an individual may lose their TPS status.  Specifically, the Secretary (i) may move to remove TPS protection for a particular individual for cause under § 1254a(c)(3), or (ii) terminate an entire country's TPS status under § 1254a(b)(3)(B).  Neither of those scenarios has lawfully occurred here.  The Government has not invoked § 1254a(c)(3) against any of the individual Petitioners.  And the *NTPSA* declaratory judgment establishes that the vacatur of the January 17, 2025 extension and the February 5, 2025 termination of the 2023 designation were unlawful.  Thus, Petitioners' TPS continues because each Petitioner timely re-registered under the January 2025 extension which remains in effect through October 2, 2026.

This result is consistent with 8 C.F.R. § 244.14(a)(3), which indicates that even those who, unlike Petitioners, do not re-register for TPS retain TPS unless and until the government moves to withdraw their status.  *See Echeverria v. Janecka*,2026 WL 44896, at *1 (E.D. Cal. 2026) (agreeing that "once an applicant is granted TPS, they continue to be in a TPS status unless the Agency takes some action to terminate the status"); *see also Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021) (TPS "status protects [TPS holders] from removal and authorizes them to work here for as long as the TPS designation lasts"); 8 C.F.R. § 244.17 (re-registrants maintain TPS by "attest[ing] to their continuing eligibility" with no further action required "unless USCIS requests that they" submit additional documents).

### 2.     Effect of the *NTPSA* Declaratory Judgment

Respondents next contend the *NTPSA* declaratory judgment has no preclusive effect because it "is not coercive" and thus "did not declare that anyone was entitled to TPS." (Doc. 17 at 8.)  This argument is unavailing.[4]

A declaratory judgment is a real judgment.  *See Badger Cath., Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010) ("A litigant who tries to evade a federal court's judgment— and a declaratory judgment is a real judgment, not just a bit of friendly advice—will come to regret it."); *see also* 28 U.S.C. § 2201 (a declaration "shall have the force and effect of a final judgment").  The *NTPSA* declaration nullified the Secretary's challenged actions and, as detailed above, allowed Petitioners' TPS to continue because of their timely re-registration.

Respondents also assert Petitioners' claim is a core habeas claim that must be brought in the district where they are confined, primarily relying on *Calderon v. Ashmus*, 523 U.S. 740 (1998) and *Fusco v. Grondolsky*, 2019 WL 13112044 (1st Cir. June 18, 2019).  (*See* Doc. 17 at 9–10.)  This argument misses the mark.  Petitioners have properly brought their habeas petition in the district where they are or were confined, and they do not seek declaratory relief.  Indeed, Respondents do not contend that this Court lacks jurisdiction to grant habeas relief because petitioners are detained in another district.  Rather, they argue that the *NTPSA* court lacks jurisdiction to provide habeas relief to Petitioners.  (*See* Doc 17 at 9–10.)  But the *NTPSA* court's lack of jurisdiction over Petitioners' habeas claims, has no bearing on whether its declaratory judgment has preclusive effect in the habeas case properly before this Court.  Put another way, this Court has jurisdiction to grant the habeas relief requested and has found that collateral estoppel precludes Respondents from relitigating the lawfulness of DHS's vacatur and termination of TPS for Venezuelans.  Because DHS's conduct is unlawful as declared by a valid, final judgment from the *NTPSA* court, which this Court finds binding, Petitioners retain TPS

---

[4]      Respondents do not argue that the *NTPSA* declaratory judgment should be denied preclusive effect under *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), and the Court therefore does not address that question.  *See Kimble*, 107 F.3d at 715 n.2.

and may not be detained or removed.

And to the extent Respondents argue that the *NTPSA* declaratory judgment is itself legally or factually erroneous, that argument does not empower this Court to ignore a valid judgment that has not been stayed and has preclusive effect.  *See Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 910 (9th Cir. 1997) ("It is only an intervening *change* in the law that defeats collateral estoppel—the correctness of a prior ruling, even if based upon erroneous application of the law, is irrelevant." (cleaned up)). Respondents' argument is, rather, an appellate argument and not an argument against issue preclusion in this action.

### 3.    Supreme Court's Stays

Respondents next argue that the Supreme Court's stays of the NTPSA court's preliminary injunction and summary judgment rulings must "inform how a court should exercise its equitable discretion in like cases," and thus this court should decline to grant relief. (Doc. 17 at 13 (quoting *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).)  The Ninth Circuit, however, has twice explained that the Supreme Court's unreasoned stays—which do not apply to the declaratory judgment at issue in this case—do not preclude relief in this instance.  *See NTPSA v. Noem*, 163 F.4th 1152, 1158 (9th Cir. 2025) (denying Government's motion to stay NTPSA summary judgment order because "the unreasoned stay order [on the preliminary injunction] in this case provides no analysis to inform our view of the equities in this posture and on this record"); *NTPSA v. Noem*, 166 F.4th 739, 754 (9th Cir. 2026) (holding that the Supreme Court's "stay orders did not expressly decide the issue of whether the Government was likely to succeed on the merits of this case" and may have reflected "the balance of the equities or the parties' respective irreparable harms").  Given the lack of guidance on how to apply the *NTPSA* stays, the absence of a stay of the declaratory judgment at issue, and the equities at issue in this matter, the Court does not believe the Supreme Court's *NTPSA* stays preclude relief.[5]

---

[5]    To the extent Respondents suggest that the *NTPSA* declaratory judgment itself contravenes the Supreme Court's stays, that argument fails.  The Supreme Court's stays, by their own terms, address only specific orders by the *NTPSA* court—the preliminary injunction and summary judgment—both of which the Government sought to stay.  And while *Boyle* requires courts to exercise caution in exercising equitable discretion in similar cases, it does not authorize this Court to disregard a final declaratory judgment that has not

- 11 -

### 4.   Jurisdiction-Stripping Provision of 8 U.S.C. § 1252(g)

Respondents argue the Court lacks jurisdiction to enjoin Petitioners' removals under 8 U.S.C. § 1252(g).  This argument fails for two reasons.  First, that statute has no application to Petitioners' claims for release from detention because it only addresses orders of removal.  Thus, the Court plainly retains jurisdiction over the relief from continued detention (or re-detention) Petitioners seek.

Second, even as to the removal-prevention component of the requested relief, as noted in the April 23, 2026 Temporary Restraining Order (Doc. 21 (later extended)), the Court retains jurisdiction to review Petitioners' claim that their removal while retaining TPS status would violate their Fifth Amendment rights. *See Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025) (a court has "jurisdiction to decide a purely legal question that does not challenge the Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority" (quotation omitted)).  Here, Petitioners do not challenge a discretionary executive choice—the decisions to "commence proceedings, adjudicate cases, or execute removal orders" that are the "narrow" focus of § 1252(g), *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020)—and instead assert that the Government lacks the legal authority to remove them under 8 U.S.C. § 1254a(a)(1)(A) so long as their TPS remains valid.  Thus, § 1252(g) "is simply not implicated." *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018).

### C.   Other Decisions

Respondents cite a myriad of cases in support of the argument that a declaratory judgment cannot be enforced in a habeas action brought outside the district where the declaratory judgment was entered.  (Doc. 17 at 10-11.)  But Respondents' reliance on those matters is misplaced for the same reason cited above—the Court here is bound by collateral estoppel and must apply preclusive effect to the declaratory judgment to the extent it resolves the legal issue of whether Petitioners' retain TPS and are therefore protected from been stayed. *See Boyle*, 145 S. Ct. at 2654.

- 12 -

detention or removal.  Even if it is later determined that the *NTPSA* judgment suffers from the infirmity Respondents suggest, it is not this Court's province to decide which valid, unstayed, undisturbed-on-appeal judgments are legally sound and therefore must be afforded deference.

Finally, several other recent cases are in accord with this Court's decision.  In *Gonzalez v. Noem*, the Central District of California held the petitioner "retains his temporary protected status designation and is an alien provided temporary protected status under 8 U.S.C. § 1254a pursuant to the December 10, 2025, final judgment issued in *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1164 (N.D. Cal. 2025)."  *Gonzalez v. Noem*, 2026 WL 993194, at \*1 (C.D. Cal. 2026).  Similarly, the Eastern District of California noted the declaratory judgment in *NTPSA* and held "[i]n view of that district court's grant of declaratory relief and Petitioner's timely re-registration for extension of TPS pursuant to the 2025 TPS extension, Petitioner likely retains his TPS until October 2, 2026, so long as Petitioner remains eligible for TPS."  *Salas Leon v. Chestnut*, 2026 WL 523231, at \*4 (E.D. Cal. 2026).[6]

Accordingly,

**IT IS THEREFORE ORDERED** Petitioners' Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to Petitioners' claim that they retain their TPS status.

**IT IS FURTHER ORDERED** Respondents must release Petitioners Contreras and Benitez from custody immediately under the same conditions that existed prior to their detention.

**IT IS FURTHER ORDERED** Respondents are enjoined from detaining or removing Petitioners unless and until Petitioners' TPS status is revoked according to 8 U.S.C. § 1254a(c)(3) or -(b)(3)(B).

---

[6]    Another Judge in this District determined the declaratory judgment in *NTPSA* was not entitled to preclusive effect. *Herrera v. Noem*, 2026 WL 800721, at \*10 (D. Ariz. Mar. 12, 2026).  *Herrera* is distinguishable.  Critically, in that matter, the petitioner did not present evidence he was a member of NTPSA, *id.* at \*10 n.7, and as a result was not entitled to the benefit of the declaratory judgment.  Because nonmutual offensive collateral estoppel may not be advanced against the Government, the petitioner was not entitled to relief. *Id.* at \*13.  Thus, *Herrera* is not inconsistent with the Court's analysis here.

- 13 -

**IT IS FINALLY ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioners' favor and close this case.

Dated this 21st day of May, 2026.

Honorable Sharad H. Desai
United States District Judge